IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARCEL SEVCIK, | ) | Civ. No. 05-00801 ACK-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNLIMITED CONSTRUCTION | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PROCEDURAL BACKGROUND

On December 28, 2005, pro se Plaintiff Marcel Sevcik ("Plaintiff") filed a Complaint against Defendant Unlimited Construction Services, Inc. ("Defendant") alleging numerous instances of injurious conduct that adversely affected his employment.  Plaintiff also requested leave to proceed in forma pauperis.  The Court denied Plaintiff's request to proceed in forma pauperis on January 20, 2006.

Defendant filed an Answer to Plaintiff's Complaint on January 24, 2006 ("Answer").  Plaintiff filed a Response to Defendant's Answer on February 3, 2006 ("Response").[1]

_____

[1] In the May 8, 2006 Order, the Court informed Plaintiff that the Federal Rule of Civil Procedure 7(a) prohibits the filing of a reply to an answer in the absence of a court order.
(continued...)

1

On March 8, 2006, Defendant filed a Motion for Partial Dismissal of All OSHA Claims.  The Court held a hearing to address Defendant's Motion for Partial Dismissal on May 8, 2006. On the same day, the Court issued a written Order granting Defendant's Motion for Partial Dismissal of All OSHA claims. ("May 8, 2006 Order").

On May 18, 2006, Plaintiff filed a document entitled Amended and Supplemental Pleadings ("Amended Complaint").[2]

On September 27, 2006, Defendant filed a Motion for Summary Judgment ("Motion") and a Separate and Concise Statement of Facts in Support of the Motion ("Motion CSF").

On October 20, 2006, Plaintiff filed a Motion to Dispose of Defendant's Motion for Summary Judgment along with a Memorandum in Support of his Motion.  The Court construes these documents together to be Plaintiff's Opposition to Defendant's

---

[1](...continued)
May 8, 2006 Order at 2 n. 1.  However, the Court instructed Plaintiff that he could seek leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a) if he deemed it necessary.  Id.

[2] Plaintiff apparently understood the Court's Order to grant him leave to amend his complaint.  See Amended Complaint at 1. As "leave [to amend] shall be freely given when justice so requires," and courts are to be lenient regarding a pro se plaintiff's procedural errors, the Court allows Plaintiff's submission of the Amended and Supplemental Pleadings.  Fed. R. Civ. P. 15(a).  The Court construes the document to be an amended complaint.  Defendant has made no objections and will not be prejudiced by the filing of this supplemental pleading. Furthermore, Defendant addressed the document in its Motion for Summary Judgment.

Motion ("Opposition"), and not an independent motion.  In

addition, Plaintiff filed a Separate and Concise Statement in

support of his Opposition ("Opposition CSF").

On October 26, 2006, Defendant filed a Reply Memorandum

in Support of Motion for Summary Judgment ("Reply").

The parties appeared before this Court to address

Defendant's Motion on November 6, 2006.

## FACTUAL BACKGROUND[3]

Marcel Sevcik, a member of the Local 368 Laborers'

Union ("Union"), was employed as a Laborer 1 by Unlimited

Construction Services, Inc. until about January 27, 2004.

Plaintiff was engaged in construction projects performing tasks

such as chipping and demolishing concrete and using power tools.

Response at 2-3; Motion CSF ¶¶ 3-5.  In October 2003, Plaintiff

experienced pain in his hands that limited his ability to

continue to perform such duties.  Complaint ¶¶ a-c; Motion CSF ¶

6.

Shortly thereafter, Plaintiff's physician instructed

him to refrain from operating hazardous machinery, such as jack

hammers and hammer drills, for two months.  Id.  While Defendant

---

[3] The Court incorporates by reference the factual background
detailed in the May 8, 2006 Order, and only presents a brief
summary of the relevant facts.  The facts as recited in this
Order and the May 8, 2006 Order are for the purpose of disposing
of this motion and are not to be construed as findings of fact
that the parties may rely on in future proceedings.

claims that Plaintiff was placed on "light duty," it is Plaintiff's contention that Defendant continued to assign him to "full duty."  <u>Compare</u> Complaint ¶ d <u>with</u> Motion CSF ¶ 7. Defendant asserts that it later learned Plaintiff was diagnosed as completely disabled from December 18, 2003 through January 25, 2004.  Motion CSF, Declaration of Raquel S. Rabacal ¶ 9 ("Rabacal Declaration").

The second physician's diagnosis, dated January 22, 2004, indicates that Plaintiff should avoid repetitive use of his wrist until March 12, 2004, and return to work on January 26, 2004.  Motion CSF, Ex. B.  Plaintiff returned to work on January 26, 2004, but determined that he could not function as necessary. At this point, Plaintiff claims he was terminated, and that Defendant falsely reported that he had quit in its Notice of Layoffs.  Complaint ¶¶ l, m; Response at 5.  Defendant states that it considered Plaintiff to have voluntarily resigned. Motion at 4.  William J. Hoshijo, Executive Director of the Hawaii Civil Rights Commission, later determined that Plaintiff was indeed terminated and Defendant offered an "incredible reason for [Plaintiff's] separation from employment."  Motion CSF, Ex. F at 2 n. 1.

According to Defendant, Plaintiff has a pending workers' compensation claim for his injury.  Motion at 2 n. 1. Plaintiff states that he filed a claim with the Hawaii Labor and

4

Industrial Relations Board, but then withdrew the case.

Opposition at 5; Opposition CSF, Ex. O.  Plaintiff also submitted

a complaint to the Hawaii Civil Rights Commission ("HCRC").  The

HCRC dismissed his complaint and issued a right to sue letter on

September 30, 2005.  Complaint at 1.  Plaintiff then requested a

reconsideration of the HCRC's decision.  On November 15, 2005,

the HCRC denied Plaintiff's request for reconsideration,

concluding that he was not a "qualified individual with a

disability."  Based on these events, Plaintiff filed the present

cause of action before this Court.

**STANDARD**

I.   **Motion for Summary Judgment**

          The purpose of summary judgment is to identify and

dispose of factually unsupported claims and defenses.  <u>See</u>

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Summary

judgment is therefore appropriate when the "pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law."[4]  Fed. R. Civ. P.

_____

          [4] Affidavits made on personal knowledge and setting forth
facts as would be admissible at trial are evidence that a court
may consider when determining whether a material issue of fact
exists.  Fed. R. Civ. P. 56(e).  Legal memoranda and oral
argument are not evidence and do not create issues of fact.  <u>See</u>
<u>British Airways Bd. v. Boeing Co.</u>, 585 F.2d 946, 952 (9th Cir.
(continued...)

56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[5] <u>Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n</u>, 310 F.3d 1188, 1194 (9th Cir. 2002) (quoting <u>Union Sch. Dist. v. Smith</u>, 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal citations omitted).  Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323.  The moving party may do so with affirmative evidence or by "'showing'--that is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325.  All evidence and reasonable inferences drawn therefrom are considered in the light

---

(...continued)
1978).

    [5] Disputes as to immaterial issues of fact do "not preclude summary judgment." <u>Lynn v. Sheet Metal Workers' Int'l Ass'n</u>, 804 F.2d 1472, 1478 (9th Cir. 1986).

most favorable to the nonmoving party.  See, e.g., T.W. Elec.
Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th
Cir. 1987).  So, too, the Court's role is not to make credibility
assessments.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249
(1986).  Accordingly, if "reasonable minds could differ as to the
import of the evidence," summary judgment will be denied.  Id. at
250-51.

　　　　Once the moving party satisfies its burden, however,
the nonmoving party cannot simply rest on the pleadings or argue
that any disagreement or "metaphysical doubt" about a material
issue of fact precludes summary judgment.  See Celotex, 477 U.S.
322-23; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg.
Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468
(9th Cir. 1987).  Nor will uncorroborated allegations and "self-
serving testimony" create a genuine issue of material fact.
Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th
Cir. 2002); see also T.W. Elec. Serv., 809 F.2d at 630.  The
nonmoving party must instead set forth "significant probative
evidence" in support.  T.W. Elec. Serv., 809 F.2d at 630.
Summary judgment will thus be granted against a party who fails
to demonstrate facts sufficient to establish an element essential
to his case when that party will ultimately bear the burden of

proof at trial.[6]  See Celotex, 477 U.S. at 322.

II.  **Special Considerations for a Pro Se Litigant**

A pro se litigant's pleadings must be read more liberally than pleadings drafted by counsel.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987).  When a plaintiff proceeds pro se and technically violates a rule, the court should act with leniency toward the pro se litigant.  Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Pembrook v. Wilson, 370 F.2d 37, 39-40 (9th Cir. 1966).  However, "a pro se litigant is not excused from knowing the most basic pleading requirements."  American Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000) (citations omitted).

Before a district court may dismiss a pro se complaint for failure to state a claim upon which relief can be granted,

---

[6] When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgment."  UA Local 343 of the United Ass'n of Journeymen v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995).  Upon showing a prima facie case, the burden of production shifts and it becomes "incumbent on [the nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence cognizable under that rule."  Id. (quoting Fed. R. Civ. P. 56(e)); Charles Alan Wright et al., Federal Practice & Procedure § 2727 (3d ed. 1998).  The ultimate burden of persuasion as to the non-existence of any genuine issues of material fact remains on the moving party. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000); accord Dye v. United States, 121 F.3d 1399, 1409 (10th Cir. 1997).

the court must provide the pro se litigant with notice of the deficiencies of the complaint and an opportunity to amend it if the deficiencies can be cured, prior to dismissal.  <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992); <u>Eldridge</u>, 832 F.2d at 1136.  However, the court may deny leave to amend where amendment would be futile.  <u>Flowers v. First Hawaiian Bank</u>, 295 F.3d 966, 976 (9th Cir. 2002) (<u>citing</u> <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.</u>, 911 F.2d 242, 247 (9th Cir. 1990) (per curiam)); <u>Eldridge</u>, 832 F.2d at 1135-36.  Similarly, "when the district court transforms a motion to dismiss into a motion for summary judgment, it must inform a plaintiff who is proceeding pro se that it is considering more than the pleadings and must afford a reasonable opportunity to present all pertinent material."  <u>Lucas v. Dept. of Corrections</u>, 66 F.3d 245, 248 (9th Cir. 1995).

## <u>DISCUSSION</u>

Defendant asserts that Plaintiff's only remaining federal law claim is one for disability discrimination brought pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213 (2005).  Motion at 1.  Defendant then argues that Plaintiff cannot satisfy the required elements of an ADA claim.  Believing that Plaintiff's only remaining federal law claim must fail, Defendant moves the Court to dismiss the remaining state law claims due to a lack of subject matter

9

jurisdiction.  Motion at 2.  Defendant also states that diversity jurisdiction does not exist in this case.  The Court will first examine Plaintiff's federal ADA claim.  It will then turn to the remaining claims to assess whether the Court still has jurisdiction over the case.

**I.   ADA Claim**

Under the ADA, an employer may not discriminate "against a qualified individual with a disability because of the disability."  42 U.S.C. § 12112(a).  To establish a discrimination claim pursuant to the ADA, a plaintiff must show that (1) he is a disabled person within the meaning of the ADA; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability.  Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999) (citing Kennedy v. Applause, 90 F.3d 1477, 1481 (9th Cir. 1996)).

For the purposes of its Motion,[7] Defendant only challenges whether Plaintiff can satisfy the qualified individual prong of an ADA claim.  Motion at 6 n. 3 and at 7 n. 4.  The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the

_____

[7] Thus, at this time, the Court need not address  what appear to be genuine issues of material fact as to whether Plaintiff is disabled and whether he was terminated.

employment position that such individual holds or desires." 42
U.S.C. § 12111(8).  Thus, the Court must consider whether
Plaintiff "can perform the job's essential functions without
reasonable accommodation, and then, if he cannot, whether he can
do so with reasonable accommodation." Dark v. Curry County, 451
F.3d 1078, 1086 (9th Cir. 2006) (citing Kaplan v. City of North
Las Vegas, 323 F.3d 1226, 1231 (9th Cir. 2003)).

**1.   Essential Functions**

       "The term essential functions means the fundamental job
duties of the employment position the individual with a
disability holds or desires.  The term 'essential functions' does
not include the marginal functions of the position." 29 C.F.R. §
1630.2(n)(1); see Dark, 451 F.3d at 1087.  Among other reasons, a
court should consider the employer's judgment as to what the
essential functions of the job are.  42 U.S.C. § 12111(8); see
also 29 C.F.R. § 1630.2(n)(2)(i-iii).  It is the plaintiff's
burden to demonstrate that he can perform the essential functions
of the job. Kennedy, 90 F.3d at 1481 (citing Lucero v. Hart, 915
F.2d 1367, 1371 (9th Cir. 1990)).

       Plaintiff was employed as a construction worker and
performed the duties categorized as "Laborer 1" for Defendant.
Motion CSF ¶ 4, Ex. C.  In the course of that employment,
Plaintiff admits that he poured concrete, ground concrete,
drilled concrete, chipped concrete with a jackhammer, and

operated power equipment and/or power tools.  Motion CSF ¶ 5, Ex. C.  Through its employee, Raquel S. Rabacal, Office Manager and Safety Administrator, Defendant declares that these are the essential functions for the Laborer 1 position.  Motion CSF ¶ 5, Rabacal Declaration ¶ 5.  Plaintiff does not challenge Defendant's judgment regarding the essential functions for a Laborer 1.  Motion CSF, Ex. C ¶ 4.

Plaintiff could not perform the essential functions of a Laborer 1 with or without reasonable accommodations at the time the employment relationship between Defendant and him ended in January 2004.  Motion CSF ¶ 19, Ex. B.  Plaintiff also admits that he cannot perform the majority of these functions at the present time.  Motion CSF ¶¶ 15-17, Ex. C at 1 and ¶¶ 4-8 (stating that he can operate only those power tools that do not produce harmful vibrations).

The Court concludes Plaintiff could not perform the essential functions of the job that he held with or without reasonable accommodations.  There are no disputed genuine issues of material fact related to this determination.  Thus, Plaintiff can only be a "qualified individual with a disability" if he could perform the essential functions of the job that he desires with or without reasonable accommodation.

## 2.   Reasonable Accommodation

Again, the burden rests on the employee to show the

existence of a reasonable accommodation that would allow him to perform the essential functions of an available job.  <u>Dark</u>, 451 F.3d at 1088 (<u>citing</u> <u>Zukle v. Regents of University of California</u>, 166 F.3d 1041, 1046 (9th Cir. 1999)).  However, at the summary judgment stage, a plaintiff "need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases."  <u>Dark</u>, 451 F.3d at 1088 (<u>citing</u> <u>U.S. Airways, Inc. v. Barnett</u>, 535 U.S. 391, 401-02, 122 S. Ct. 1516 (2002)).  The ADA defines the term "reasonable accommodation" as:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

> (B) job restructuring, part-time or modified work schedule, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

Plaintiff does not contend that there is a reasonable accommodation that would allow him to perform the essential functions of the Laborer 1 position.  Instead, he seeks a reasonable accommodation from Defendant in the form of reassignment to a vacant "light duty" position in the general construction field, or retraining for another position.  Opposition at 4; Amended Complaint at 2.  Plaintiff contends that he is able to work in "other broad construction employments."

Opposition at 4.   He offers two pages from the Master Agreement between the Union and Defendant, which generally discusses "Other Laborer Classifications and Rates of Pay."   Opposition CSF, Ex. M; Reply at 4-5.[8]   Plaintiff specifically identifies the position of "Safety Person," as one that he is both interested in and could perform.   Opposition at 4.   Other positions named in this exhibit include watchman, maintenance man, guard, and light clean-up (Janitorial) laborer.   Opposition CSF, Ex. M.

Reassignment to a vacant position, where the employee can perform the essential functions of the job, is an acceptable reasonable accommodation.   42 U.S.C. § 12111(9).   However, the employer is not obligated to create a new position to accommodate the disabled employee or remove an existing employer from the position that the disabled employee now desires.   See Wellington v. Lyon County School District, 187 F.3d 1150, 1155 (9th Cir. 1999).   It follows that employers are also not required to train an employee for a position that he is not qualified to perform.[9]

---

[8] While identifying Exhibit M as a portion of its own agreement with Plaintiff's Union, Defendant objects to the authenticity of the document.   Recognizing that Plaintiff neglected to submit an affidavit attesting to the authenticity of his exhibits, the Court will still consider Exhibit M for the basis of this Motion.   Again, the Court is meant to be lenient when pro se plaintiffs make procedural errors.   In addition, Defendant's Reply confirms the identity of the document.

[9] At the November 6, 2006 hearing, Plaintiff orally cited Hawaii Revised Statute § 368-17 as the basis for his request for training.   H.R.S. 368-17 provides the remedies that may be

(continued...)

See e.g., Quintana v. Sound Distribution Corp., 1997 WL 40866, *6
(S.D.N.Y. 1997) (citing Bates v. Long Island Railroad Company,
997 F.2d 1028, 1035 (2d Cir. 1993)).  However, as the duty to
reasonably accommodate is a continuing duty, the employer should
consider positions for reassignment that are currently available
along with those that may become available within a reasonable
period of time.  Dark, 451 F.3d at 1089-90 (citing Humphrey v.
Memorial Hospitals Association, 239 F.3d 1128, 1138 (9th Cir.
2001)).

        Defendant represents to the Court that from the time
Plaintiff's employment relationship with Defendant ended in
January 2004 through the present, no permanent, vacant "light
duty" positions have been available.  Motion CSF ¶¶ 22-23,
Rabacal Declaration ¶¶ 14-15.  Plaintiff acknowledges that such
positions are rare in Hawaii's limited labor market.  Opposition
at 4.  In fact, Plaintiff only suggests one instance where
temporary "light duty" construction positions were available.
Near the completion of the Marriot-Poipu project, he claims he

---

        [9](...continued)
ordered by the Hawaii Civil Rights Commission or a court for
violations of Hawaii's state discrimination laws.  See H.R.S. §
368-1, et seq..  Some of the potential remedies include an
"apprenticeship training program, on-the-job training program, or
other occupational training or retraining program . . . ."
H.R.S. § 368-17(a)(2).  Thus, Plaintiff may seek these remedies
in state court upon pursuing a state law discrimination claim,
but such training programs are not required as reasonable
accommodations under the ADA.

requested to be laid off or receive some time to rest his symptoms as "lighter duties were becoming available to other laborers." Amended Complaint at 11. However, even if temporary "light duty" construction positions were becoming available, Defendant has no obligation to make these positions permanent to accommodate Plaintiff's disability.

Plaintiff has failed to meet his burden to prove that he is a qualified individual with a disability as defined by the ADA. Specifically, Plaintiff's claim is deficient in that he presents no evidence of permanent, available "light duty" positions that he could perform the essential functions of the job with or without reasonable accommodations. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's ADA claim.

## II.  **Jurisdiction**

Defendant moves the Court to dismiss the remaining claims for lack of subject matter jurisdiction. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130 (1966) (stating that federal courts should dismiss state claims if all of the federal claims are dismissed prior to trial). Defendant contends that none of the remaining claims are brought pursuant to federal law and there is no diversity jurisdiction.

Plaintiff's claim that his residency in Hawaii is very uncertain and that he might move to Europe or another state

cannot create diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Opposition at 4.  Diversity jurisdiction is determined at the time the suit is commenced.  <u>Mann v. City of Tucson, Dept. of Police</u>, 782 F.2d 790, 794 (9th Cir. 1986).  It is undisputed that Defendant was a citizen of Hawaii on December 28, 2005, when this action was commenced.  Rabacal Declaration ¶ 3.  When Plaintiff initially filed his Complaint, he listed his address at an apartment in Lihue, Hawaii.  Complaint at 1.  He now states that he has changed his address to a P.O. Box and stays with a friend on a temporary basis.  If this change had occurred prior to the initiation of the lawsuit, he would have listed the new address on the Complaint.  Furthermore, Plaintiff does not actually challenge that he was a resident of Hawaii when the suit commenced.  Thus, the Court finds no basis for diversity jurisdiction.

In considering whether additional federal law claims exist aside from the ADA claim, Plaintiff only explicitly mentions two other claims grounded in federal law.  First, to the extent that they were exerted, the Court already dismissed any claims brought pursuant to the Occupational Safety and Health Act, 29 U.S.C. §§ 651-678 (2005).  May 8, 2006 Order at 6-13.  Second, Plaintiff vaguely asserts that there was a violation of the National Labor Relations Act ("NLRA"), Section 8(a)(3).  Complaint ¶ 1; <u>see</u> 29 U.S.C. § 151, et seq..  However, the

17

National Labor Relations Board ("NLRB") has primary jurisdiction over unfair labor practice claims.  United Food and Commercial Workers Union, Local 1036 v. N.L.R.B., 307 F.3d 760, 766 (9th Cir. 2002) (citing Communications Workers of America v. Beck, 487 U.S. 735, 742-43, 108 S. Ct. 2641 (1988)).  There is no evidence that Plaintiff exhausted his remedies for such a claim before the NLRB.

Beyond those claims, Plaintiff generally describes his claims against Defendant as "insurance fraud, prohibited discriminatory practice, unlawful employment practice, intentional tort, breach of their duty, breach of contractual requirements, and false, fraudulent, fictitious claims and misrepresentation of material facts to Hawaii Civil Rights Commission and Equal Employment Opportunity Commission."  Complaint at 7.  Plaintiff further characterizes the nature of the case as one of personal injury and employment discrimination. See Plaintiff's Scheduling Conference Statement at 1.

Based on Plaintiff's summary of his claims, the Court concludes that Plaintiff's remaining causes of action are grounded in state law.  As such, the Court dismisses all state law claims without prejudice.  Plaintiff may pursue those claims in state court.  The Court reminds Plaintiff that he may continue to present evidence of alleged OSHA violations to support his state law claims.  The Court also dismisses without prejudice any

18

other federal law claims that are not discernible to the Court from the record before it.

## CONCLUSION

For the foregoing reasons, the Court: (1) GRANTS Defendant's Motion for Summary Judgment on Plaintiff's ADA claim; (2) DISMISSES Plaintiff's state law claims without prejudice; and (3) DISMISSES without prejudice any remaining federal law claims that are not readily discernible to the Court.

The Court finds that Plaintiff's ADA claim must fail because there is no evidence to support a conclusion that he is a "qualified individual with a disability." Plaintiff cannot perform the essential functions of the position he held with or without reasonable accommodations. In addition, Defendant could not have reasonably accommodated Plaintiff by reassigning him to a permanent, available "light duty" position, because none exist.

The Court dismisses Plaintiff's remaining claims for lack of subject matter jurisdiction. There is no diversity jurisdiction in this case. In the absence of any pending federal law claims, all of the state law claims are dismissed without prejudice. However, Plaintiff may pursue those claims in state court.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 6, 2006.



Alan C. Kay
Sr. United States District Judge